UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VICTORIA ISAAC and J.I., a minor child, :
                                        :
                    Plaintiffs,         :
                                        :          **MEMORANDUM & ORDER**
        -against-                       :          17-cv-4675 (DLI)
                                        :
KRISTINE CRANDALL, Director, Nebraska   :
Service Center, United States Citizenship and :
Immigration Services; and KIRSTJEN NIELSEN, :
Secretary, United States Department of Homeland :
Security,                               :
                                        :
                    Defendants.         :
------------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

Petitioner Victoria Isaac ("Isaac") filed an I-130 Petition for Alien Relative (the "Petition"), seeking to classify J.I., a minor child whom she had adopted in Guyana, as a child of a United States citizen. The Director of the Nebraska Service Center (the "Director") of the United States Citizenship and Immigration Services ("USCIS") denied the Petition for Isaac's failure to establish that she resided with the adopted child for at least two years. Isaac, on a motion for summary judgment, seeks judicial review of that decision under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701. The government filed a cross-motion for summary judgment. For the reasons set forth below, Isaac's motion is denied and the government's motion is granted.

**I.     BACKGROUND**

Petitioner Virginia Isaac is a naturalized United States citizen who was born in Guyana and was formerly a national of Guyana. (R. at 66-67.)[1] She is married to Steven Isaac, and together the Isaacs reside in Brooklyn, New York. J.I., a minor, is a native and citizen of Guyana and

---

[1] "R." refers to the USCIS Administrative Record, filed in hard copy due to volume. (*See*, Docket Entry No. 16.)

resides in Guyana. She was born in May 2005. (*Id.* at 86.) Starting shortly after J.I.'s birth, Isaac engaged in a series of trips to Guyana to spend time with J.I. in anticipation of her adoption and eventual move to the United States. These 21 trips were the focus of the Director's denial of the Petition.

Isaac's trips to Guyana spanned from 2005 through 2015. (*Id.* at 91.) The parties helpfully delineate these trips into four categories. The first series of trips occurred between August 2005 and May 2008, before Isaac legally adopted J.I. Isaac took six trips totaling 96 days, the longest of which lasted 23 days. During these trips, J.I. would stay with Isaac at Isaac's mother's house. (*Id.* at 88.) Each time Isaac left Guyana to return to the United States, Isaac would return J.I. to the home of J.I.'s natural mother, Desiree Jennifer Van Gronigen ("Gronigen"). J.I. resided with Gronigen at all other times during this period.

In May 2008, Isaac purchased property in Guyana (*Id.* at 92), and on June 9, 2008, Isaac's adoption of J.I. was complete. These facts set apart the second category of visits: from August 2008 through December 2011, Isaac took nine trips to Guyana totaling 142 days. During these trips she stayed with J.I. in Isaac's home that she maintained in Guyana, but when she would return to the United States, J.I. would return to live with her natural mother.

In January 2012, Isaac made her cousin, Coreen Newton, personal guardian over J.I. and "permanently relocated [J.I.]" to Newton's home. (*Id.* at 89.) The third series of visits spanned from August 2012 to December 2013, in which Isaac took five trips to Guyana totaling 84 days. The longest trip during this period was 25 days. After each of these trips, Isaac would return J.I. to Newton's house, even though she would stay with J.I. at her own home while in Guyana. (*Id.*) When Isaac was not visiting Guyana, J.I. resided with Newton for a total of 434 days. (*Id.* at 91.)

Finally, from June 2014 to September 2015, Isaac took a leave of absence from her job and visited J.I. in Guyana for 432 days, minus eight days in March 2015. (*Id.*) She stayed with J.I. at Newton's house, not the home she had purchased in Guyana, because she "decided it would be much better to keep [J.I.] in her school and around her friends" rather than transfer schools. (*Id.* at 89.)

The record contains evidence of Isaac's parental control of J.I., both during her visits and while in the United States as well as the Isaacs' and Gronigen's intentions surrounding the adoption and the visits. Gronigen attested that she recommended that the Isaacs adopt J.I. because she was unable to properly care for her. (*Id.* at 112.) Indeed, Isaac and others allege Victoria and Steven Isaac were 100% financially responsible for J.I. since her birth. (*Id.* at 88 (Isaac Aff.), 112 (Gronigan Aff.), 114 (Newton Aff.).) She asserts that the series of visits were taken for the purpose of adopting J.I. and carrying on as a family in the United States. During her trips, Isaac supervised J.I. on a daily basis. (*Id.* at 88.) Other evidence submitted indicates that Isaac exercised control over decisions related to J.I.'s school and medical care. (*See*, *Id.* at 24, 32, 129.)

On May 9, 2016, Isaac filed a Petition for Alien Relative (Form I-130) seeking classification of J.I. as her adopted "child" under the meaning of the Immigration and Nationality Act ("INA"). (*Id.* at 63-65.)

On October 27, 2016, the Director issued a Request for Evidence ("RFE"). (*Id.* at 9-12.) The RFE sought information concerning the law's two-year joint residency requirement. The RFE advised that "[m]ere visits cannot satisfy [the joint-residency] requirement." (*Id.* at 10.) In response, Isaac submitted several documents through her attorney to try to satisfy the requirement. (*See*, *Id.* at 22 (list of documents).)

3

By letter dated February 24, 2017, the Director issued its decision denying Isaac's petition. (*Id.* at 1-4.) The Director found that Isaac's 432-day stay in Guyana from June 20, 2014 through September 3, 2015 was the only visit that satisfied the joint residency requirement. (*Id.* at 3.) The Director found that Isaac did not establish sufficient joint residence for any other period of time:

> For the first three years (2005-2008) [Isaac] did not physically reside with [J.I.] for a period longer than 23 days. These short visits are considered visits. The requirement of residence with the child connotes a familial relationship not inherent in a mere visit. The residence need not be continuous; however, the residence of the adopted child with the adoptive parents entails more than a succession of visits by the adopted parents in the home of the adopted child.

(*Id.* at 2.) The Director went on to note that during the 2005-2008 visits, "in which [Isaac] resided with [J.I.] for less than 23 days, [Isaac] did not have legal custody, and she was continuously residing with her natural parents." (*Id.*) The Director concluded that "[6] short visits, of less than 24 days each, in a three year time span, would not have a greater parental impact, on [J.I.] as residing full time with the natural mother who still had full custody of the child." (*Id.*)

The Director noted that even after Isaac's response to the RFE, the nature of Newton's guardianship over J.I. was unclear. The Director went on to state that from 2005 to 2012, J.I. resided with her natural mother, and from 2012 to the date of decision, J.I. resided with Newton, to whom Isaac had given guardianship. (*Id.*) Accordingly, the Director denied the Petition.

On August 9, 2017, Isaac filed her complaint for declaratory relief under the Administrative Procedures Act. (Docket Entry No. 1.) On April 26, 2018, the parties filed their fully briefed cross-motions for summary judgment. (Docket Entry Nos. 18-22.)

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is

By letter dated February 24, 2017, the Director issued its decision denying Isaac's petition. (*Id.* at 1-4.) The Director found that Isaac's 432-day stay in Guyana from June 20, 2014 through September 3, 2015 was the only visit that satisfied the joint residency requirement. (*Id.* at 3.) The Director found that Isaac did not establish sufficient joint residence for any other period of time:

> For the first three years (2005-2008) [Isaac] did not physically reside with [J.I.] for a period longer than 23 days. These short visits are considered visits. The requirement of residence with the child connotes a familial relationship not inherent in a mere visit. The residence need not be continuous; however, the residence of the adopted child with the adoptive parents entails more than a succession of visits by the adopted parents in the home of the adopted child.

(*Id.* at 2.) The Director went on to note that during the 2005-2008 visits, "in which [Isaac] resided with [J.I.] for less than 23 days, [Isaac] did not have legal custody, and she was continuously residing with her natural parents." (*Id.*) The Director concluded that "[6] short visits, of less than 24 days each, in a three year time span, would not have a greater parental impact, on [J.I.] as residing full time with the natural mother who still had full custody of the child." (*Id.*)

The Director noted that even after Isaac's response to the RFE, the nature of Newton's guardianship over J.I. was unclear. The Director went on to state that from 2005 to 2012, J.I. resided with her natural mother, and from 2012 to the date of decision, J.I. resided with Newton, to whom Isaac had given guardianship. (*Id.*) Accordingly, the Director denied the Petition.

On August 9, 2017, Isaac filed her complaint for declaratory relief under the Administrative Procedures Act. (Docket Entry No. 1.) On April 26, 2018, the parties filed their fully briefed cross-motions for summary judgment. (Docket Entry Nos. 18-22.)

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is

By letter dated February 24, 2017, the Director issued its decision denying Isaac's petition. (*Id.* at 1-4.) The Director found that Isaac's 432-day stay in Guyana from June 20, 2014 through September 3, 2015 was the only visit that satisfied the joint residency requirement. (*Id.* at 3.) The Director found that Isaac did not establish sufficient joint residence for any other period of time:

> For the first three years (2005-2008) [Isaac] did not physically reside with [J.I.] for a period longer than 23 days. These short visits are considered visits. The requirement of residence with the child connotes a familial relationship not inherent in a mere visit. The residence need not be continuous; however, the residence of the adopted child with the adoptive parents entails more than a succession of visits by the adopted parents in the home of the adopted child.

(*Id.* at 2.) The Director went on to note that during the 2005-2008 visits, "in which [Isaac] resided with [J.I.] for less than 23 days, [Isaac] did not have legal custody, and she was continuously residing with her natural parents." (*Id.*) The Director concluded that "[6] short visits, of less than 24 days each, in a three year time span, would not have a greater parental impact, on [J.I.] as residing full time with the natural mother who still had full custody of the child." (*Id.*)

The Director noted that even after Isaac's response to the RFE, the nature of Newton's guardianship over J.I. was unclear. The Director went on to state that from 2005 to 2012, J.I. resided with her natural mother, and from 2012 to the date of decision, J.I. resided with Newton, to whom Isaac had given guardianship. (*Id.*) Accordingly, the Director denied the Petition.

On August 9, 2017, Isaac filed her complaint for declaratory relief under the Administrative Procedures Act. (Docket Entry No. 1.) On April 26, 2018, the parties filed their fully briefed cross-motions for summary judgment. (Docket Entry Nos. 18-22.)

II.  **DISCUSSION**

   A.  **Standard of Review**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is

material if it might affect the outcome of a suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Cases arising under the APA are typically resolved by summary judgment on the basis of the administrative record compiled by the agency. *See*, *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744–745 (1985). "The fact-finding capacity of the district court is thus typically unnecessary to judicial review of agency fact-finding. . . . [C]ourts are to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Id.* at 744.

Under 5 U.S.C. § 706(2)(A), a court reviewing an agency decision must hold unlawful and set aside any agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Karpova v. Snow*, 497 F.3d 262, 267-68 (2d Cir. 2007). "[T]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.* (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). If, however, the agency decision "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," the agency's decision must be set aside. *Westchester v. U.S. Dept. of Housing and Urban Development*, 802 F.3d 413, 431 (2d Cir. 2015) (internal quotations and citation omitted); *Karpova*, 497 F.3d at 268 (identifying same grounds for setting aside agency action as in *Westchester*, as well as the agency relying "on factors which Congress has not intended it to consider"). "In other words, so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision

that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned." *Karpova*, 497 F.3d at 268.

B.      **Statutory and Regulatory Background**

Under the laws of the United States, the definition of the term "child" in section 101(b)(1)(E) of the Immigration and Nationality Act, 8 U.S.C. § 1101 (b)(1)(E), includes an adopted child only if, among other requirements, the child has been in the legal custody of, and has resided with, the adoptive parent or parents for at least two years.

> Evidence must also be submitted to show that the beneficiary resided with the petitioner for at least two years. Generally, such documentation must establish that the petitioner and the beneficiary resided together in a familial relationship. Evidence of parental control may include, but is not limited to, evidence that the adoptive parent owns or maintains the property where the child resides and provides financial support and day-to-day supervision. The evidence must clearly indicate the physical living arrangements of the adopted child, the adoptive parent(s), and the natural parent(s) for the period of time during which the adoptive parent claims to have met the residence requirement. When the adopted child continued to reside in the same household as a natural parent(s) during the period in which the adoptive parent petitioner seeks to establish his or her compliance with this requirement, the petitioner has the burden of establishing that he or she exercised primary parental control during that period of residence.

8 C.F.R. § 204.2(d)(2)(vii)(B). "The term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(33).

C.      **Analysis**

The Court finds that the Director's decision that Isaac failed to satisfy the two-year residency requirement was not arbitrary, capricious, or an abuse of discretion, and was otherwise in accordance with the law. It was reasonable for the Director to conclude that the 2005-2008 visits—during which period J.I. was not yet adopted and otherwise lived with her natural mother— were "mere visits" and did not meet the joint residency requirement as defined in the statute and

decisions of the Board of Immigration Appeals ("BIA"). The Director was within her discretion to consider the short duration of Isaac's visits to Guyana in 2005-2008. *See*, *In Re: Lozano Remolacio*, 2007 WL 2825212 (BIA 2007) ("[T]he petitioner was present in the Philippines for substantial periods of time which suggest more than mere visits. . . . The duration of the periods of presence in the Philippines established in this matter is indicative of the petitioner residing in the Philippines during such period.").

The BIA has held that a petitioner fails to meet her burden of proof in visa petition proceedings by merely showing a succession of visits by the adopting parent in the home of the adopted child. *Matter of Repuyan*, 19 I. & N. Dec. 119 (BIA 1984). In *Repuyan*, the BIA dismissed the appeal of a petitioner who visited the beneficiary children in the Philippines for a total of 27 months, which took place over a total of seven visits of various duration over a 16-year span. *Id.* at 120. The BIA first stressed that the definition of "reside" "implies that the child resides in a home established by the adopting parent." *Id.* at 120-21. Second, the BIA underscored that residence is defined in the INA as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." *Id.* at 121.

The Director appropriately applied *Repuyan* to the facts here. From 2005 through 2008, J.I. did not "reside[] in a home established by the adopting parent." To the contrary, she stayed with her natural mother at all times, except when Isaac would visit Guyana and stay with J.I. at Isaac's mother's house. J.I.'s "place of general abode" was and remained her home with her natural mother. When Isaac came to Guyana, she would stay with J.I. at Isaac's mother's house and would return J.I. to her natural mother at the end of the visits. Applying BIA case law, the Director noted that J.I. resided with her natural mother during this period because Isaac's short visits did not meaningfully interrupt J.I.'s residence with her natural mother. *See*, *Matter of Cuello*,

7

20 I. & N. Dec. 94, 97 (BIA 1989) ("[A]n inquiry into the nature of the relationship between the adopted child and adoptive parents, as compared with the relationship between the child and his or her natural parents, is appropriate.").

The Director's analysis would have been sufficient after finding that the 2005-2008 visits failed to satisfy the joint residency requirement because even if the remaining visits (2008 through 2015) counted toward the two-year requirement, the total length would equal only 658—over two months shy of the two-year minimum (730 days). (R. at 91.)

Nonetheless, the Director continued her analysis, properly concluding that Isaac's nine trips from August 2008 to December 2011 also failed to satisfy the joint residency requirement. While Isaac did legally adopt J.I. before this time period, and Isaac would stay with J.I. at Isaac's newly-purchased home during these trips, J.I. spent only 142 days at Isaac's home and approximately 41 months in her natural mother's home. Accordingly, J.I.'s place of residence, her *abode*, remained with her natural mother. *See*, *Repuyan*, 19 I. & N. Dec. at 121 ("the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent."). Thus, the Director's finding is not arbitrary or capricious, or otherwise contrary to law.

Isaac argues that the Director "entirely failed to consider important aspects of the problem" including that: (1) the trips were in contemplation of the adoption; (2) J.I.'s natural mother was unable to care for her; (3) Isaac made many payments to J.I.'s natural mother throughout the period, purportedly in support of J.I.; (4) the Isaacs have made important decisions about J.I.'s life, even while they were living in the United States; and (5) the Isaacs are loving parents who had been looking to start a family with J.I. since before her birth. (Pet. Br. at 10.)

This argument ignores critical parts of the Director's decision. The Director took note of the evidence of parental control that Isaac submitted with the Petition and in response to the RFE.

The Director analyzed where J.I. lived during each series of trips, paying particular attention to the fact that J.I. resided with her natural mother for much of the time periods in question. (R. at 2.) The Director referenced medical documents, property records, and a document from J.I.'s school, and concluded that the evidence supports only that Isaac had "visited Guyana on several occasions." (*Id.* at 3.) Considering the money transfer receipts submitted in response to the RFE, which showed payments from Isaac to J.I.'s natural mother, the Director concluded "[t]hese payments show that you were not physically residing in Guyana during this time frame, and supports the earlier statements that [J.I.] resided with her natural parents." (*Id.* at 3.)

*Repuyan* states that "the language of the statute requires that the child reside with the adopting parent." 19 I. & N. Dec. at 120-21. It goes on to observe that "residence" "means the place of general abode, the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." *Id.* at 121. Here, it was within her discretion for the Director to determine that Isaac did not reside in Guyana during the 2005-2008 visits when she stayed with her mother and that Isaac's home was not J.I.'s general place of abode at any time, except for the long stay in Guyana at the end of the period. Nothing in *Repuyan* suggests that other factors (financial support or parental decision-making) are to be given more weight than where the adoptive parent and the adopted child reside, let alone that they should control in the face of facts to the contrary.

The Court is not permitted to substitute its judgment for that of the agency. *Karpova v. Snow*, 497 F.3d 262, 267 (2d Cir. 2007). The Director's path to her conclusion "may reasonably be discerned" and the Director "examine[d] the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made." *Id.* at

9

268. There is relevant evidence in the record that a reasonable mind might accept as adequate to support the Director's conclusion. Accordingly, this Court will uphold the Director's decision.

## III. CONCLUSION

For the reasons stated above, the government's motion for summary judgment is granted, Isaac's motion for summary judgment is denied, and this action is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2019

/s/
DORA L. IRIZARRY
United States District Judge